JOHN KIERNAN, Respondent, *v.* THE DUTCHESS COUNTY MUTUAL INSURANCE COMPANY, Appellant.

1. FIRE INSURANCE —APPRAISAL AT INSTANCE OF COMPANY, NOT A WAIVER OF FORFEITURE. When an appraisal of the loss under a fire insurance policy is proper in any event, the mere fact that one was had at the request of the company has no bearing upon the question of a waiver of forfeiture.

2. LACHES IN ASSERTION OF FORFEITURE. An election by the company to insist upon the forfeiture of a fire insurance policy for a breach of its conditions must be asserted within a reasonable time after acquiring knowledge of the breach.

3. WAIVER OF FORFEITURE IMPLIED FROM INCONSISTENT ACTS AND SILENCE — CHATTEL MORTGAGE. A waiver of a forfeiture of a severally valued fire insurance policy, for the breach of a warranty by the existence of a chattel mortgage upon part of the insured property, may be inferred, where, after knowledge of the mortgage, the company has made no exception of or discrimination against the mortgaged property in the negotiations for the settlement of the loss, and has objected to proofs of loss, including the mortgaged property, solely for the reason that they were not based upon the valuation awarded by an appraisal which the insured asserted to be fraudulent and void, without raising any other question than that of values, or saying anything about an intention to forfeit, until the commencement of an action against it upon the policy.

4. Appraisal of Fire Loss — Grounds for Setting Aside — Concealed Bias of Appraiser. When a false statement is made by the representative of an insurance company in regard to the attitude of a proposed appraiser of a fire loss, for the purpose of inducing consent to his appointment, which is in that way obtained, and where concealment is practiced in regard to his real attitude to the company nominating him, and when in fact he is not disinterested, good ground is shown for setting aside an appraisal which is grossly below the actual loss sustained, although it has been concurred in and agreed to by the appraiser nominated by the insured.

*Kiernan* v. *D. Co. M. Ins. Co.*, 80 Hun, 602, affirmed.

(Argued May 28, 1896 ; decided October 6, 1896.)

Appeal from judgment of the General Term of the Supreme Court in the third judicial department, entered July 20, 1894, which affirmed a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

This was an action to set aside an award, made by appraisers under a policy of fire insurance, as fraudulent and void and to recover the amount of the policy.

The complaint, in addition to such allegations as are necessary to authorize a recovery upon a policy in an action at law, also set forth the award and alleged that the plaintiff was induced to execute the arbitration agreement and to accept the nominee of the defendant as one of the appraisers, by certain false representations made by a general agent of the company ; that the award, made without the aid of an umpire, was inadequate and unfair and was owing to prejudice and partiality on the part of said appraiser nominated by the defendant and his control over the appraiser nominated by the plaintiff. The answer denied all allegations tending to show that the award was unfair or fraudulent and alleged that the policy was void, because the personal property insured thereby was incumbered by a chattel mortgage, in violation of a warranty to the contrary.

Although the action was in equity, the court took an advisory verdict from a jury upon certain questions relating to the award, but the final decision, which adopted the verdict so

far as it went and at the same time disposed of the other issues, was made by the court. The trial judge found the facts in accordance with the theory of the complaint, so far as the award was concerned, and also found that the defendant waived any forfeiture that it might have invoked " by virtue of any chattel mortgage upon the whole or any part of the personal property insured." Judgment was directed vacating the award and that the plaintiff recover the full value of the property destroyed, so far as it was covered by the insurance. The policy, dated June 15th, 1891, made insurance from that day until June 15th, 1894, to an amount not exceeding $2,200, upon certain property of the plaintiff as follows : $200 on his barn, $400 on his dwelling house, $420 on his household furniture, $100 on his farming implements, $200 on his horses, $360 on his cows, $400 on his hay and grain, and $160 on his wagons, sleighs, harnesses, etc. On the 7th of December, 1891, the house, barn, and substantially all of the personal property were destroyed by fire, being then worth over $2,200, as found by the court, but only $1,037 as determined by the appraisers. Further facts appear in the opinion.

*Robert F. Wilkinson* for appellant. The court erred in rejecting the defendant's evidence of the existence of a chattel mortgage upon a portion of the insured property. (Code Civ. Proc. § 507; *Petrakion* v. *Arbelly*, 23 Civ. Proc. Rep. 183–186; Baylies' Code Pleading, 17, 221, 222; *Thompson* v. *Halbert*, 109 N. Y. 329; Wood on Fire Ins. § 486; *Underwood* v. *F. J. S. Ins. Co.*, 57 N. Y. 500; *Bishop* v. *A. Ins. Co.*, 130 N. Y. 488; *Titus* v. *G. F. Ins. Co.*, 81 N. Y. 410–419; *More* v. *N. Y. B. F. Ins. Co.*, 130 N. Y. 537; *Armstrong* v. *A. Ins. Co.*, 130 N. Y. 560–565; *Rademacher* v. *G. Ins. Co.*, 75 Hun, 83–88; *Devens* v. *M. & T. Ins. Co.*, 83 N. Y. 168.) There was no waiver by any act of the defendant connected with the adjustment of the loss or the appraisal. (*Armstrong* v. *A. Ins. Co.*, 130 N. Y. 560; *Walker* v. *P. Ins. Co.*, 89 Hun, 333; *Gray* v. *G. Assur. Co.*, 82 Hun, 380; *Weed* v. *L. & L. F. Ins. Co.*, 116 N. Y. 106; *P. Ins. Co.* v. *Stevenson*,

18 Ky. 160; *Fitchpatrick* v. *H. Ins. Co.*, 53 Iowa, 335; *Johnson* v. *A. Ins. Co.*, 41 Minn. 396; *Murphy* v. *P., etc., Ins. Co.*, 7 Allen, 239; *Colonius* v. *Hibernia Co.*, 3 Mo. App. 56; *Beatty* v. *Ins. Co.*, 66 Penn. St. 9.)

*Howard Chipp, Jr.*, for respondent.    The chattel mortgage covering a portion of the personal property was properly excluded. (*Knowles* v. *A. Ins. Co.*, 66 Hun, 220; 142 N. Y. 641; *Pratt* v. *D. H. M. F. Ins. Co.*, 130 N. Y. 206; *A., etc., Co.* v. *G. F. Co.*, 20 N. Y. Supp. 646; *Murray* v. *N. Y. L. Ins. Co.*, 85 N. Y. 236; *Metropolitan L. Ins. Co.* v. *Meeker*, 85 N. Y. 614; 2 Greenl. on Ev. [12th ed.] § 376; Code Civ. Proc. §§ 507, 508; Moak's Van S. Pleading, 552.)    The defendant, however, had no right either to allege or to prove the existence of a chattel mortgage on either the whole or any part of the property, for it had waived the defense sought to be founded upon it, and such waiver has been found by the court. (*Benninghoff* v. *A. Ins. Co.*, 93 N. Y. 502; *Titus* v. *G. F. Ins. Co.*, 81 N. Y. 410; *Ins. Co.* v. *Norton*, 6 Otto, 234; *Carpenter* v. *C. Ins. Co.*, 61 Mich. 635; *Roby* v. *A. C. Ins. Co.*, 120 N. Y. 510–517; *McNally* v. *Phœnix Ins. Co.*, 137 N. Y. 389–397; *Gibbs* v. *Dutchess Co. M. Ins. Co.*, 50 N. Y. S. R. 35; *Prentice* v. *Knickerbocker L. Ins. Co.*, 77 N. Y. 483; *N. W. M. L. Ins. Co.* v. *Germania F. Ins. Co.*, 40 Wis. 446; *Webster* v. *Phœnix Co.*, 36 Wis. 67–72; *Marthison* v. *N. B. Co.*, 64 Mich. 372.)

VANN, J.    Two questions are presented by this appeal: 1. Whether the defendant waived any forfeiture that otherwise it would have had the right to insist upon.    2. Whether the award was properly set aside.    The policy in question contained the following clause : " This entire policy   *   *   * shall be void if   *   *   *   the interest of the insured be other than unconditional and sole ownership   *   *   *   or if the subject of insurance be personal property and be or become incumbered by a chattel mortgage."    It also con-

tained the usual provision for an appraisal in case of loss by " two competent and disinterested appraisers," aided, if necessary, by an umpire to be chosen by them, and expressly provided that the company should not " be held to have waived any provision or condition of the policy or any forfeiture thereof by any requirement, act or proceeding on its part relating to the appraisal."

As the policy was issued upon different kinds of property, each separately valued, the contract is severable, although but one premium was paid and the amount of insurance was the sum total of the valuations. (*Pratt* v. *Dwelling House, etc., Ins. Co.,* 130 N. Y. 206, 221.) A policy containing the provision above quoted in relation to a forfeiture in case of incumbrance by chattel mortgage was recently held by this court to be void at the option of the company only as to the property mortgaged, but not as to such property, separately insured, as was free from mortgage. (*Knowles* v. *American Ins. Co.,* 142 N. Y. 641, adopting opinion below, as reported in 66 Hun, 220.) As a warranty is for the benefit of the company, it may take advantage of a forfeiture based thereon or may waive the same if it thinks the latter course will better promote its interests. There may be a waiver by express agreement or through estoppel, but neither is required to effect that result, as words or acts from which an intention to waive may reasonably be inferred are sufficient, at least when acted upon. (*Titus* v. *Glens Falls Ins. Co.,* 81 N. Y. 410, 419; *Roby* v. *American Central Ins. Co.,* 120 N. Y. 510, 517; *Armstrong* v. *Agricultural Ins. Co.,* 130 N. Y. 560.) The distinction between waiver and estoppel, as applied to the law of insurance, is not in all respects clearly defined. An express waiver is in the nature of a new contract, modifying to some extent the old one. It does not require a new consideration, unless it is by inducing a change of position, for the law of waiver seems to be a " technical doctrine, introduced and applied by courts for the purpose of defeating forfeitures." (*People* v. *Manhattan Co.,* 9 Wend. 351, 381; *Knickerbocker Ins. Co.* v. *Norton,* 96 U. S. 234.) An estop-

pel forbids the assertion of the truth by one who has knowingly induced another to believe what is untrue and to act accordingly.   While express waiver rests upon intention, and estoppel upon misleading conduct, implied waiver may rest upon either, for it exists when there is an intention to waive unexpressed, but clearly to be inferred from circumstances, or when there is no such intention in fact, but the conduct of the insurer has misled the insured into acting on a reasonable belief that the company has waived some provision of the policy.   (*Ronald* v. *Mutual, etc., Life Assn.*, 132 N. Y. 378 ; *Armstrong* v. *Agricultural Ins. Co., supra ;* 2 Biddle on Insurance, § 1052.)   While the principle may not be easily classified, it is well established that if the words and acts of the insurer reasonably justify the conclusion that with full knowledge of all the facts it intended to " abandon or not to insist upon the particular defense afterward relied upon," a verdict or finding to that effect establishes a waiver, which, if it once exists, can never be revoked.   (*Trippe* v. *Provident Fund Society*, 140 N. Y. 23 ; *Benninghoff* v. *Agricultural Ins. Co.*, 93 N. Y. 495 ; *Brink* v. *Hanover Fire Ins. Co.*, 80 N. Y. 108 ; Clements' Dig. Insurance Law, 624, § 6 ; 2 May on Insurance, 504a ; 2 Biddle on Insurance, 1053.)

As the forfeiture claimed in this case did not extend to all the personal property, because the chattel mortgage covered only a part thereof, an adjustment of the loss was necessary, and the company had the right to demand an appraisal, even if it intended to insist upon the breach of warranty as a defense.   Hence it is unnecessary to consider the effect of the provision in the policy that the insurer should not be held to have waived any condition or forfeiture " by any requirement, act or proceeding on its part relating to the appraisal."   As an appraisal was proper in any event the mere fact that one was had at the request of the company has no bearing upon the question of forfeiture, and in reviewing the facts relied upon to constitute a waiver care should be taken to discriminate between acts relating exclusively to the appraisal and those wholly independent thereof.

Prompt notice of the fire was given to the defendant, and Mr. Vail, its president, at once called on the plaintiff and imformed him that the adjuster would be around in a few days and "settle up" with him.    When this remark was made it does not appear that the company knew about the chattel mortgage upon the cows, but before the interview terminated, the plaintiff, replying to questions put to him by the president, disclosed the fact, which elicited no comment. In a short time Mr. Selvage, the adjuster and general agent of the defendant, saw the plaintiff by direction of Mr. Vail, and asked him as to the nature and value of the property, and when, from whom and at what price he purchased the cows, horses, etc.    The plaintiff gave the adjuster full information upon these subjects, furnished him with a partial list of the various items of loss, and at his request, the next day, walked two and one-half miles to Kingston and gave him a complete schedule of the property destroyed.    During the interview Mr. Selvage asked him what he would "take in cash to settle the whole matter up," and the plaintiff answered that he wanted the face of the policy.    Selvage said that he did not see how they could settle in that way and suggested an appraisal, and after much persuasion the plaintiff consented to the appointment of appraisers before proofs of loss were prepared. Appraisers were selected, under circumstances to be mentioned hereafter, and they made an award which was satisfactory to the company only, and which the court found to be "insufficient and false."

The defendant then prepared proofs of loss based upon the award and presented them to the plaintiff for execution, but he refused to sign them.    It also offered him a draft for $1,037, the amount of the award, but he declined to accept it and thereupon employed counsel, made out proofs of loss, stating the value of each kind of property insured in separate and distinct items, including that covered by the mortgage, and served them upon the defendant.    They were promptly returned with a letter from Mr. Vail stating, in substance, that they were rejected as not in accordance with the facts because

they were not based upon the award, and declining "to receive any proof of loss made upon any other basis." No other ground was stated, and no allusion was made to the right or the intention of the company to take advantage of the chattel mortgage clause in the policy. The plaintiff at once re-served the proofs of loss, notified the defendant that the appraisal was fraudulent and void and offered to have the amount of his loss settled "by an honest appraisement as provided by the policy." The company retained the proofs and, so far as appears, several months passed before it intimated any intention to insist upon a forfeiture. During all the negotiations there was neither act done nor word spoken by any officer or agent of the company indicating an intent to rely upon the breach of warranty, or discriminating in any way against the property to which the warranty related. The policy was treated as valid in every respect, and the only questions raised related to values. The preparation by the defendant of proofs of loss, based upon the award and including the mortgaged property, showed an intention to waive the forfeiture and to rely upon the appraisal. There was no condition suggested, nor right reserved, nor even an allusion made to the possibility that the company might refuse to pay anything on account of the property in the mortgage. It did not deny its liability to pay for that property until after all negotiations had ceased and this action was about to be commenced. The officer who prepared and tendered the proofs of loss represented the company, and what he intended at the time, the company is presumed to have intended. Unless his intention was to pay the loss on the mortgaged property as well as the rest, why did he insert it in the proofs of loss? Why did he ask the plaintiff to swear to a loss upon property that he did not intend to pay for? Why did he treat one kind of property the same as another, unless he intended to waive the breach of warranty?

The rejection of the proofs of loss solely for the reason that they were not based upon the award, without saying anything about an intention to forfeit, indicates that no such intention

existed.    Where an insurance company returned proofs of
loss for alleged irregularity, without insisting upon a known
breach of warranty as to occupancy, it was held that a waiver
of the breach might have been found.    (*McNally* v. *Phœnix
Ins. Co.*, 137 N. Y. 389.)    While the act was of less signifi-
cance in the case now before us than in the case cited, because
the warranty under consideration did not affect all the prop-
erty, it has a direct and important bearing upon the question
of intent.    By the acts and declarations referred to, the com-
pany treated the policy as valid in all its parts, and showed an
intention to abandon the defense afterward insisted upon.
The insurance was recognized as in force upon the property
mortgaged, the same as it was upon all the rest.    An election
to forfeit must be asserted within a reasonable time, and the
company should have made an exception of the cows during
the negotiations, if it intended to exclude them from sharing
in the benefit of the policy.    When the plaintiff refused to
accept payment of the amount fixed by the award, it was unfair
to not then tell him that the forfeiture would be enforced, if
that was the intention.    It was misleading to reject the proofs
because they did not conform to an award that embraced all
the property, and afterward to claim that a part of the prop-
erty was not covered by the insurance on account of the
chattel mortgage.    The most of the acts of the company
tending to show its intent to waive the forfeiture, were inde-
pendent of the appraisal, for some of them preceded, while
others followed it.    They did not bear such a relation to it as
to be excluded from consideration under the clause of the
policy upon the subject of waiver.    Without prolonging the
discussion upon this point, we announce as our conclusion
that the evidence, independent of all acts relating to the
appraisal, sustains the finding of a waiver by the trial court.

The plaintiff was induced to accept Mr. Vischer as one of
the appraisers upon the representation of Mr. Selvage, as the
trial court found, that he " was a business man, a resident of
Kingston and an impartial and disinterested person to act as
appraiser."    In fact he did not live in Kingston, but in Syra-

cuse.  He was not a business man, in the ordinary sense of those words, but a professional insurance adjuster of long experience, who was then in the employment of an association of insurance companies engaged in adjusting insurance rates in the city of Kingston.  He was a friend of Mr. Selvage, had been associated with him in the adjustment of losses " on the side of the insurance companies," and had been visited by him at his house in Syracuse.  He had adjusted many losses in behalf of insurers, and for twenty years had been engaged in the insurance business.  His extensive experience had made him skillful, and constant employment by insurance companies had given his mind an honest bias in their favor.  The other adjuster, Mr. Coutant, was a man of no experience in such matters, so that Mr. Vischer took the leading part in fixing values.  Although neither of them had ever seen the property, when the plaintiff asked leave to be present at the appraisal so as to describe the various articles and state their value, they refused permission, through Mr. Vischer, and excluded both him and Mr. Selvage from the room.  Mr. Coutant testified that Vischer's estimates usually prevailed; that they differed as to the value of the buildings, but Mr. Vischer inserted his own estimate, saying, "We will put the figures down now and go on," but they never returned to the subject, and Mr. Coutant thoughtlessly signed the award with these figures unchanged and with no actual meeting of minds in relation to them.  While all this was strenuously denied by witnesses for the defendant, it was admitted that Mr. Selvage did not tell the plaintiff that his nominee for appraiser was an insurance adjuster.

The evidence tended to show and the trial court found that Mr. Vischer dominated and controlled the mind of Mr. Coutant, and that the former was not an impartial and disinterested person to act as appraiser.  It is impossible to distinguish this branch of the case from the principle that governed our decision in *Bradshaw* v. *Agricultural Ins. Co.* (137 N. Y. 137); and we close our review by repeating the words of Judge PECKHAM, written upon that appeal and

applying them to the appeal now before us : " When a false statement is made in regard to the attitude of a proposed appraiser for the purpose of inducing consent to his appointment, which is in that way obtained, and where concealment is practiced in regard to his real attitude to the company nominating him, and when in fact he is not disinterested, good ground is shown for setting aside an appraisal which is grossly below the actual loss sustained, although it has been concurred in and agreed to by the appraiser nominated by the insured."

The judgment should be affirmed, with costs.

All concur.

Judgment affirmed.