FRED SCHIFFERDECKER, Plaintiff, *v.* WILLIAM C. BUSCH, Defendant.

Supreme Court, Albany County, October 11, 1927.

Vendor and purchaser — land contract — specific performance by vendor — contract of sale referred to deeds — vendee after having knowledge that deeds contained restrictive covenants reaffirmed contract — defect in title not shown — restrictive covenants waived — specific performance decreed.

The contract entered into by the parties whereby the defendant agreed to purchase certain land from the plaintiff described the property by reference to two title deeds held by the vendor and contained no reference to any restrictive covenants or incumbrances. The vendee went into possession. At the time of the execution of the contract and during its preparation the vendee had the possession of the two deeds and examined them. At the closing date the vendee called the vendor's attention to the fact that there had been omitted from the contract a part of the premises that he agreed to purchase, and the vendor acknowledged his mistake and a reference to the title deed of that piece of property was incorporated in the original contract and the interlineation was initialed by both the vendor and the vendee and the contract was reaffirmed and redelivered. At that time the vendee had full knowledge of the restrictive covenants and incumbrances which he now claims relieves him from completing his contract.

The vendee cannot complain of certain rights or easements, since any easement existing was for the benefit of the parcels purchased by the vendee.

40

An objection that a lien of $1,000 existed against the property has been met by a release of that lien. The objection that the contract did not convey land under water in the Hudson river is met by the law which gives to the owner filled-in land and land under water in the Hudson river and also by an offer on the part of the plaintiff to execute a quitclaim deed of the appurtenant lands under water, and further strengthen defendant's title.

A restriction contained in one of the deeds to the effect that no building could be built upon the property to interfere with the view of a third person is of small importance, especially in view of the fact that no evidence was offered to show that the restrictive covenant in any way depreciates the market value of the property.

While the mere reference to the title deeds in the original contract may not have been a sufficient specification under the terms of the contract to compel the defendant to take the property subject to restrictive covenants and incumbrances, yet when the contract was reaffirmed by the defendant with full knowledge of the existence of those restrictive covenants and incumbrances, the minds of the parties met in that regard and it was the obvious intent of the defendant to take the property subject to those covenants and incumbrances. He had the right to reject or ratify the contract on the closing date, and having chosen to ratify it, he cannot later reject it on the ground that it was a bad bargain.

ACTION to compel the specific performance of a written contract for the sale and conveyance of real property.

*Bender & Ford,* for the plaintiff.

*John O. Bates [John J. McManus* of counsel], for the defendant.

RUSSELL, J. The contract was executed and delivered by the parties March 23, 1926. By its provisions the vendor agreed to sell and the vendee agreed to purchase the premises therein described for the sum of $30,000. One hundred dollars was paid on account of the purchase price and thereafter the vendee took possession of the property by exercising acts of ownership over it and the vendor removed therefrom. The balance of the purchase price was to be paid and a deed of the property delivered March 31, 1926.

By the consent of the parties to this contract the property agreed to be sold was designated and described by reference to the county clerk's records of two title deeds held by the vendor. No other description of the property was set forth in the contract and no specific reference was therein made to any restrictions or incumbrances that might exist of record, or otherwise, against the property.

At the time of the execution of the contract and during its preparation the vendee had possession of the two deeds incorporated in the contract containing a description of the property, including the restrictions and incumbrances, and examined them.

One of the provisions of this contract was that the vendor should " convey said premises to the vendee in fee simple, free and clear from all liens, rights of dower or other incumbrances (unless herein-

after specified) by a good and sufficient deed of conveyance in the usual form of a warranty deed."

Between the day of the execution of this contract and the time fixed therein for its fulfillment, viz., March 31, 1926, the vendee made a search of the county clerk's records with respect to the title to the premises he agreed to purchase, and on March 31, 1926, both parties met at the law office in Albany of Attorney Martin T. Nachtmann, who represented the vendor. At that time the vendee, who was represented by an attorney, called the vendor's attention to the fact that there had been omitted from the contract a part of the premises he had agreed to purchase known as the dock or icehouse property. It was mutually conceded that this was a mistake and, at the suggestion of Mr. Nachtmann and with the consent of the parties, a reference to the title deed of this property by book and page of the county clerk's records was inserted in the contract and the interlineation was initialed by both the vendor and vendee. By like consent and by indorsement upon the contract the time to consummate the sale was adjourned to April eighth.

The evidence discloses that when this amendment of the contract was made it was understood by the parties that it was reaffirmed and redelivered.

It appears from the evidence and exhibits in this case that there were certain restrictions, reservations or incumbrances of record upon certain parcels of this real property which had not been specifically mentioned, either in the original or amended contract, except as they were mentioned in the deeds referred to therein, and the vendee now contends that he ought not to be compelled to fulfill his part of this contract because of these incumbrances.

On March thirty-first, when this contract was amended and renewed, the vendee had full knowledge of the reservations and incumbrances of record against the property, and, being represented by an attorney and having had independent advice, it must be assumed that he knew their legal effect.

When the contract was amended the only fault the vendee found with the original contract was that it did not contain the dock or icehouse property before mentioned. He then knew all about these record reservations and incumbrances but did not mention them nor in any manner object to them. He seemed to be content to take the property as it was. At that time he had the right to refuse to fulfill the contract, but he did not.

On the adjourned date the parties again met at Mr. Nachtmann's office and the vendee through his attorney, C. Raymond Burton, who was then present, repudiated the contract he had made and refused to consummate his bargain because, as he stated, the warranty

deed the vendor proposed to give him had not been executed, the taxes on the property had not been paid and a mortgage covering the property had not been discharged. He made no objections whatever to the title. The vendor expressed his willingness to fully perform his part of this contract in every particular, but the vendee's lawyer said: " We want to get out of this matter; we are going to get out of this," and then, when Mr. Nachtmann told him that neither the vendor nor the law would permit him to repudiate this contract, he replied: " We are going to get out of it any way; we want to get out of it." The parties then separated, the contract was not performed by the vendee and this action was commenced.

The defendant by his answer demands that this contract be rescinded and that he recover from the plaintiff the amount he paid on the purchase price and his expenses for searches and his attorney's fees.

The real property which is the subject of this action is a farm situated at Cedar Hill, Albany county, and is contiguous to the Hudson river. It is known in this case as parcels Nos. 1, 2, 3, 4, 5 and 6.

The defendant's contention is that there is a water-pipe easement across parcel No. 1 for supplying water to the remaining lands with the right to enter upon the lands to make repairs; that parcel No. 2 contains a covenant against erecting a building or structure to obstruct the view of one James B. Lyon; that there is a right-of-way for passage with wagons and otherwise across parcel No. 4; that the deed of the dock or icehouse property does not include lands under water in the Hudson river; that there is a lien imposed upon the whole premises for the payment of $1,000 to one Abby S. Jewett.

At the time of the trial the plaintiff had caused this $1,000 lien to be released.

There seems to be no force to defendant's contention as to parcels Nos. 1 and 4. Whatever rights or easements may have existed at one time with respect to these two parcels they no longer exist as the plaintiff is now the owner of the entire property to which these rights or easements relate and such rights are merged in him.

The plaintiff is the owner of the dock or icehouse property which is along the Hudson river. Therefore, the filled-in land and land under water in the Hudson river belongs to the upland owner and a conveyance of this property by the plaintiff carries with it these appurtenances and passes the title to the grantee of the upland. (Archibald v. N. Y. C. & H. R. R. R. Co., 157 N. Y. 575, 579.)

It also appears that the plaintiff has offered the defendant and is now ready and willing to give him a quitclaim deed of the appurtenant lands under water to further strengthen his title.

The restriction as to building upon parcel No. 2 would seem to be an immaterial one, owing to the physical condition, character and location of the property and the relatively small portion of farm land to which this restriction applies. Moreover, no evidence was offered by the defendant to show that this restrictive covenant, applicable to this parcel only, in any way depreciates the market value of the property he agreed to purchase as a whole.

Defendant's objections to the title would, therefore, seem to be without merit.

While the mere reference to the title deeds in the original contract may not have been a sufficient specification under the terms of the contract to compel the defendant to take the property subject to the incumbrances' specified in those deeds, yet when the contract was amended and the deed of the icehouse or dock property incorporated therein, the defendant then having full knowledge of such reservations and incumbrances as existed of record and their legal effect, the minds of the parties fully met and the obvious intention of the defendant then was to take the property subject to such reservations and incumbrances as then existed of record against the property, except the mortgage covering the premises which the plaintiff agreed to discharge. He then had a right either to reject or ratify his bargain. He made no objection whatever to the title, and, I think by his acts and conduct at that time, he waived his right to afterward reject it, ratified and confirmed the contract and became bound to fulfill it.

Waiver has been defined to be " the intentional relinquishment of a known right. It is voluntary and implies an election to dispense with something of value, or forego some advantage which the party waiving it might at its option have demanded or insisted upon." (*Clark* v. *West*, 193 N. Y. 349, 360.)

A waiver once made can never be revoked. (*Kiernan* v. *Dutchess County Mutual Insurance Co.*, 150 N. Y. 190.)

Regarding ratification, in *Adair* v. *Brimmer* (74 N. Y. 539, 554) the Court of Appeals said: " Confirmation and ratification imply to legal minds, knowledge of a defect in the act to be confirmed, and of the right to reject or ratify it." Even, " an unconscionable arrangement will not be disturbed when there has been ratification of it with knowledge of all its bearings, after time has been had for consideration." (*Kent* v. *Quicksilver Mining Co.*, 78 N. Y. 159, 190.)

My conclusion is that these rules apply to the acts and conduct

of the defendant in this case, and that the evidence warrants a finding that the defendant abandoned and waived any rights he may have had by failing to insist upon them when the original contract was amended and that he ratified and confirmed his previous act with full knowledge of any defects in the record title that then existed.

I am not unmindful that in the ordinary bargain for the sale and conveyance of real property a purchaser is entitled to a marketable title, a title that will enable him to hold the land purchased free from any probable claim by another. (*Chesebro* v. *Moers*, 233 N. Y. 75, 81.) Yet parties are entitled to make their own agreements and are bound by them, especially when made with deliberation after ample opportunity to investigate and inquire, so a purchaser of real estate may bargain to take it subject to existing incumbrances if he chooses. The parties to this action made their own bargain and understood it. They are bound in good conscience to fulfill it.

Time was not of the essence of this contract. It was not stipulated to be so and in equity it may be disregarded. (*Higgins* v. *Eagleton*, 155 N. Y. 466.)

Plaintiff has always been ready and willing to perform his part of this contract and has manifested the utmost good faith from the beginning of the transaction to the time of the trial.

The defendant has not shown good faith in this transaction. The inference from the evidence is irresistible that he did not refuse to perform his part of this contract because of any defects in the title to the property purchased, but because he had changed his mind, regretted his bargain and wanted to get out of it. He assigned no reasons to support his attitude other than those which have been referred to. He at no time made any objection to the title until he interposed his answer in this case.

The specific performance of such a contract rests in the discretion of the court and the plaintiff having appealed to equity it seems to me equity demands that this contract be enforced.

The counterclaim of the defendant is dismissed and the plaintiff may have judgment for specific performance.

Submit findings and judgment.