James D. Hopkins, J.
This action has been tried by the court without a jury. The plaintiff seeks judgment declaring void ab initio a policy of insurance issued on the lives of the defend *148 ant, John J. Brown, his wife and their two children, on the ground that certain statements made by said defendant in the application for the policy were untrue and known to him to be untrue when made.
The statements claimed by the plaintiff to constitute misrepresentation involve the weight of the defendant, Brown, his condition of health and past medical history. The defendant stated in his application, dated October 28, 1957, that his weight was 210 pounds, that he had not been treated for goiter or thyroid disorder, and that he had not been treated for any disease or disorder of the glands. No medical examination was required by the plaintiff, and on November 7,1957, the policy in suit was issued.
Thereafter, the defendant applied for insurance to the Mutual Life Insurance Company of New York on March 7, 1958. In that application the defendant stated that his weight was 260 pounds, that his weight had been constant for the past four years and that he had consulted Doctor John Generi within the past five years for a chronic thyroid condition. The defendant gave no testimony in explanation of these apparent discrepancies between the two applications. Under these circumstances, the plaintiff’s evidence must be weighed most strongly in its favor (Milio v. Railway Motor Trucking Co., 257 App. Div. 640; Borman v. Phipps Estates, 260 App. Div. 657; Parkas v. Parkas, 265 App. Div. 521). The plaintiff further offered proof that it would not have issued the policy if it had known the true facts concerning the defendant’s physical condition and past medical history.
In September, 1958, the plaintiff tendered the return of the premiums, which the defendant did not accept. In February, 1959, the present action was commenced.
The statements made by the defendant in the application submitted to the plaintiff were representations, not warranties (Insurance Law, § 142, subd. 3). A misrepresentation is a false representation, and the misrepresentation of lack of medical treatment was material (Insurance Law, § 149; Tolar v. Metropolitan Life Ins. Co., 297 N. Y. 441, 446-447). As the action was brought within the contestable period (Insurance Law, § 155, subd. 1, par. [b]), the plaintiff may seek to terminate its liability under the policy.
Bescission by an insurer of a policy because of misrepresentation of material facts by an insured is a well-recognized remedy (Geer v. Union Mut. Life Ins. Co., 273 N. Y. 261; Travelers Ins. Co. v. Pomerantz, 246 N. Y. 63; New York Life Ins. Co. v. Miller, 17 Misc 2d 532). Here the proof is clear that the defendant’s *149 statements concerning Ms physical condition and lack of medical treatment were material misrepresentations entitling the plaintiff to rescission of the policy.
The defendant, however, asserts that the plaintiff may not sue for rescission because it has waived its right and is estopped from maintaining this action. The defense of waiver and estoppel rests on (1) that subsequent to September, 1958 (when the defendant refused to accept a tender of premiums), the plaintiff rceived and accepted premium payments for November and December, 1958 and January, 1959; (2) that subsequent to September, 1958, the plaintiff in November, 1959 and November, 1960, sent notices to the defendant stating the amount of dividends paid on the policy.
It may be regarded as settled law that any act or declaration of an insurer with knowledge of circumstances working a forfeiture of the policy, which leads the insured to consider himself to be protected thereby and upon which he acts in that belief, constitutes a waiver and estoppel (Titus v. Glens Falls Ins. Co., 81 N. Y. 410; 16 Appleman, Insurance Law and Practice, § 9253, pp. 806-810). Although waiver and estoppel are terms used interchangeably, they represent distinct concepts of law. A waiver is a voluntary act of election between two or more courses of action. An estoppel, on the other hand, is an abatement of rights through the intervention of law because of equitable considerations; it contemplates an act to the prejudice of one party in reliance on the conduct of another (see discussion in 16 Appleman, Insurance Law and Practice, § 9081, pp. 594-599).
Thus, it has been held that the retention of unearned premiums with knowledge by the insurer of misrepresentations by the insured waives the right by the insurer to put an end to the policy. TMs is so because the insurer has voluntarily made the choice of recognizing the continued vitality of the policy as against the alternative of forfeiture (Ellis v. Columbian Nat. Life Ins. Co., 270 App. Div. 143; 3 Couch, Cyclopedia of Insurance Law, § 690, pp. 2288-2289). The plaintiff’s evidence, however, indicates that its home office instructed its New Rochelle office in September, 1958, to reject future premiums, and that through error the premiums described were accepted. When the error was discovered, the November and December premiums were sent to the defendant, who did not accept them and returned them to the plaintiff. In the meantime, the January premium was received by the plaintiff and, again, by error was accepted. There is no evidence that the plaintiff ever attempted to return this premium.
*150 The court does not find that the retention of the premiums under these circumstances waived the forfeiture. An error made by an employee in a branch office in following the instructions of the general office should not bind the plaintiff to a choice not intended and, indeed, opposed to the course of action already chosen. As was said in Alsens Amer. Portland Cement Works v. Degnon Contr. Co. (222 N. Y. 34, 37), waiver “ is essentially a matter of intention. Negligence, oversight or thoughtlessness does not create it. * * * The evidence must have probative force sufficient to prove that there was in fact an intention to waive the right or benefit — a voluntary choice not to claim it.” Inadvertent acceptance is not equivalent to deliberate acceptance (cf. Travelers Ins. Co. v. Pomerantz, 246 N. Y. 63, supra; Metropolitan Life Ins. Co. v. Blum, 7 A D 2d 488). Nor could an estoppel against the plaintiff be spelled out, for there is no proof of a change of position by the defendant to his detriment.
The defendant points out that the plaintiff did not return, or offer to return, the January, 1959 premium paid by the defendant. The court does not regard that failure to be essential to the maintenance of this action by the plaintiff. The intention of the plaintiff to rescind had already been made, and the defendant had already been apprised of that intention.
The actions of the plaintiff in November, 1959 and November, 1960, of sending dividend notices to the defendant are of a somewhat different character. Both were independent actions of the plaintiff, as contrasted to the more passive actions of receiving and accepting premium payments, and both incurred long after the plaintiff had manifested its election to treat the policy as void. The plaintiff excuses its actions by testimony that the dividend notices were prepared by electronic machines from a tape, and that an employee, whose duty it was to revise the tape upon the instructions from her superior that the defendant’s policy was in question, failed to make the necessary changes to prevent the machine from printing the notices. The notices, in turn, were mailed to the defendant. There was further testimony that these errors occurred at a time when the plaintiff’s system of bookkeeping was in a period of transition from partial to full mechanization.
The court has not been able to discover any case, either in New York or elsewhere, where the issuance of dividend notices has been relied on to establish waiver or estoppel. A dividend paid on an insurance policy is in effect the distribution of surplus to the policyholder (Rhine v. New York Life Ins. Co., 273 N. Y. 1; 8 Couch, Cyclopedia of Insurance Law, § 1944, p. 6473). The dividend reduces the cost of the insurance pro tanto to the *151 policyholder. There is, of course, a line of cases which hold that forfeiture of a policy for nonpayment of premiums may not be declared where there are sufficient dividends earned to pay the premiums falling due (15 Appleman, Insurance Law and Practice, § 8281, pp. 77-82), but that rule does not touch the question here.
On principle, however, the declaration of dividends must be construed to be a recognition of the existence of the policy in full force and effect. It is a payment by the insurer to the insured based on the policy and measured by the policy. It is an action inconsistent with rescission, which repudiates the policy. Under proper circumstances, therefore, the sending of dividend notices might be considered a waiver of the insurer’s right to declare a forfeiture on the ground of misrepresentation by the insured.
But, under the circumstances, here the court finds neither waiver nor estoppel. Although the insurer has been beset by a series of errors on this policy, it still remains the fact that errors they were, and not conduct which was a deliberate recognition of the policy. The electronic miracle of the business machine is still tinctured by the intrusion of the human mind; the machine, faithful slave that it is, made no decision here that was not dictated by its master. And the master, in this instance, was an employee who disobeyed the orders of her superiors. Indeed, the error in this and other like policies was not discovered by the plaintiff until the dividend notices were produced by the defendant at this trial. These facts do not persuade the court that the plaintiff waived its right of rescission. The court does not find, either, that the defendant has been misled to his prejudice into a change of position in reliance on the dividend notices. The instant suit was already in progress when the notices were sent out, and the positions of the parties continued in the same conflict afterwards.
A precedent to a degree similar to this case is Reserve Life Ins. Co. v. Howell (357 P. 2d 400 [Ore.]). There the clerk of the insurer, after an action for rescission had been commenced, failed to flag an electronic machine which prepared and sent out premium notices. As a result, premium notices were sent to the insured and payments accepted for 15 months. The Oregon court reversed the judgment below, dismissing the complaint, and held that the insurer had not waived its rights, nor was estopped to enforce them because of the error, citing New York authorities on the volitional character of the doctrine of waiver. For the reasons stated, the court directs judgment in favor of the plaintiff.